## BRETZ et v
## UNION CENTRAL LIFE INS CO

Ohio Appeals, 2nd Dist, Darke Co

No 518. Decided Sept 23, 1937

Billingsley & Manix, Greenville, for plaintiff-appellants.

Murphy & Staley, Greenville, for defendants-appellees.

# 334

## OPINION

By HORNBECK, J. .

This is an action for specific performance.

The petition avers in substance that plaintiffs were the owners of 153.27 acres of land more or less in Washington Township, Darke County, State of Ohio, upon which there was a first mortgage to The Union Central Life Insurance Company for $10,348.16, as of October 1, 1934, with interest at 6% from that date and a second mortgage securing promissory notes to the following persons in the approximate amounts set out after their names:

| | |
|---|---|
| C. E. Thompson | $555.00 |
| Catherine Thompson | 555.00 |
| Myrtle Moore | 555.00 |
| E. S. Young, Executor | 1110.00 |

that . plaintiffs were also indebted on an unsecured promissory note to The Farmers National Bank of Greenville, Ohio, in the sum of $1700.00.

It is further averred that on the 9th of August, 1934, plaintiffs, at the request of the defendant and upon its advice and suggestion, upon a promise made through its duly authorized agents to accept a scale down of the amount due it, made application to the Federal Land Bank of Louisville, through its local adjunct, Darke County National Farm Loan Association, for a loan of $14,000.00 on the land described in the petiion, in order to liquidate the above mentioned indebtedness; that on or about October 10, 1934 the Farm Credit Administration of the Federal Land Bank of Louisville, through its local adjunct, Darke County National Farm Loan Ass'n, issued a commitment letter to the plaintiffs, agreeing to loan them, through the said land bank, the sum of $5300.00 and through the Land Bank Commission the sum of $4000.00 on the security of the real estate described in the petition; that the loan was to be made payable in bonds of the Federal Farm Mortgage Corporation and/or cash and was to be disbursed to said plaintiffs' creditors in full satisfaction and liquidation of their said claims after the deduction from the amount of the loan for taxes, assessments, fees due the Darke County National Farm Loan Ass'n and other expenses set out.

It is further averred that one of the conditions of the commitment was that the plaintiffs were to fully and completely liquidate all of their said indebtedness, including mortgage indebtedness to the defendant; that plaintiffs accepted said commitment loan and procured written acceptances from all of the creditors, both secured and unsecured, to accept bonds of the Federal Farm Mortgage Corporation and the amount thereof is set forth, the sum which the defendant agreed to accept being $8100.00; that on the 4th of December, 1934, E. H. Bishpham, duly authorized agent of the defendant, on its behalf agreed in writing to accept the sum of $8100.00 in full satisfaction of its said claim if payment be made within ninety days of the date of said commitment so signed by it; that the payment was to be made in 3% bonds of the Federal Land Bank of Louisville and such cash adjustments as were necessary in order to equal the sum of $8100.00.

Plaintiffs further aver that on the 1st of January, 1935, defendant gave notice to the Federal Land Bank* of Louisville that it would not accept a scale down of its said mortgage indebtedness and refused to abide by its agreement entered into on the 4th day of December, 1934; and further indicated that it would not carry out or take the necessary steps on its part to be taken to consummate and close the loan; that thereafter defendant gave like notice to the Darke County National Farm Loan Ass'n and thereafter, on February 15, 1935 defendant gave notice to said local adjunct of the Federal Land Bank of Louisville, Darke County National Farm Loan Ass'n, that it would not abide by said agreement and accept the amount of $8100.00 in Federal Land Bank bonds or cash at any time thereafter; and that on or about the last date aforementioned defendant notified these plaintiffs that it would not accept a scale down and would not cooperate with these plaintiffs in order to procure said loan.

Plaintiffs aver that relying upon the agreement of the creditors and the written and oral commitment of defendant they took the necessary steps required by the Federal Land Bank of Louisville and made arrangements to procure stock in the local adjunct of the Federal Land Bank of Louisville and fulfilled all the requirements necessary and conditions precedent and incidental to them procuring said loan; that said loan was completed by the Federal Land Bank of Louisville and through the Darke County adjunct, Darke County National Farm Loan Ass'n, on April 25, 1935, tendered to C. F. Medaris, an official of the defendant company, bond orders amounting to $7963.87 and bank checks for $136.15,

payment in full for the mortgage indebtedness due defendant and requested that said bond orders be executed and the same returned with the cancelled note, mortgage and other papers; that defendant refused on the 26th of April, 1935 to accept said tender and refused to sign said bond orders and that by reason of said refusal plaintiffs were unable to tender the bonds of the Federal Farm Mortgage Corporation in the amount above mentioned.

Plaintiffs further aver that because of the action of defendants in notifying the various institutions as heretofore set forth of its refusal to abide by its agreement to accept a scale down to $8100.00, plaintiffs were delayed a short period of time in closing said loan and were not able to make tender until April 25, 1935.

Plaintiffs aver that they, through the Darke County National Farm Loan Ass'n are at the present time ready, willing and able and have at all times been ready, willing and able to perform their part of said contract; that all of the creditors of plaintiffs, save the defendant, are willing to accept the amounts heretofore set forth in full settlement of their indebtedness against the plaintiffs.

The prayer of the petition is to declare specific performance of the contract between plaintiffs and defendant of date December 4, 1934 and to direct and compel the defendant to accept the amount of $8100.00 in full satisfaction of their mortgage indebtedness and that upon payment of same defendant be compelled to surrender up the note and mortgage held by it against plaintiffs.

We have set out the allegations of the petition at considerable length because the factual averments conform very closely to the proof. The defendant, by way of answer, sets up three specific defenses and by cross petition sets up its note and mortgage and prays for judgment and foreclosure.

The first defense of the answer is a general denial; the second defense is an averment in substance that the plaintiffs or the Federal Land Bank of Louisville did not accept its proposal of December 4, 1934 and that on or about February 11, 1935 it withdrew its proposal and that the plaintiffs did not accept said proposal until April 25, 1935. The third defense is a denial that the proposal of December 4, 1934 was signed by the plaintiffs or anyone acting for them or on their behalf and an averment that defendant received nothing from the plaintiffs or from the Federal

Land Bank of Louisville or the land bank commissioners for said offer of December 4, 1934 and that it was wholly without any consideration.

The trial court held against the defendant on its second and third defenses but found that the plaintiff had not proven that they had complied with the conditions of the contract with the defendant in that they had failed to tender payment to the defendant according to the terms of the proposal of December 4, 1934 within ninety days thereafter.

The defendant urges that for five reasons the plaintiffs are not entitled to specific performance:

1. That the plaintiffs have failed to prove that they have no adequate remedy at law.
2. That there is no mutuality between the parties.
3. That there is no consideration for the offer of The Union Central Life Insurance Company of December 4, 1934.
4. That the offer was withdrawn before it was accepted.
5. That the plaintiffs did not make tender within the time specified in the offer of the defendant on December 4, 1934.

We shall not indulge in discussion of reasons Nos. 1, 2, 3 and 4 but state generally that as to all of them we hold with the plaintiffs.

There is no dispute in the evidence that the plaintiffs were able, ready and willing to perform all the conditions of the proposal of defendant save that as to time of payment. Were the plaintiffs required to make tender within the time specified in the proposal of defendant company of December 4, 1934, wherein the company proposed to accept the payment of $8100.00 in full satisfaction of its claim **"if payment is made within 90 days of the date of this commitment?"** (Emphasis ours).

If both parties had proceeded in good faith to carry on their respective obligations under the proposal and acceptance, clearly the plaintiffs could not require specific performance unless and until they had made tender of the amount agreed by the defendant to be accepted on or before March 4, 1935, namely, within 90 days from the date of the proposal of December 4, 1934. To avoid this obligation of the plaintiffs two propositions are urged:

1. That the conduct of the defendant constituted an anticipatory breach of the

contract which relieved the plaintiffs from performing according to the specific terms of the agreement.

2. That the defendant by its action in notifying the Federal Land Bank of Louisville, the land bank commissioner and the Darke County National Farm Loan Association and plaintiff W. W. Bretz of its purpose not to go through with its proposal, thereby prevented plaintiffs' performing the obligations by them to be done within the time limit fixed.

It is also urged by plaintiffs that the time within which the agreement was to be performed by them was not of the essence of the contract, but that they had a reasonable time within which to perform and that they met this requirement.

We are satisfied that the time within which plaintiffs should perform, having been definitely fixed and set forth in the proposal of defendants, was of the essence of the agreement. This is true not only because of the fact that it was specifically carried into the proposal, but also because of the circumstances under which the proposal was made. Obviously, the defendant was making marked reduction in the amount of money due it from plaintiffs, in part, at least, because of the assurance that it would receive this amount within a limited time.

"In equity time is regarded as of the essence of the contract when it affirmatively appears that the parties regarded time as an essential element of their bargain." 13 C.J. 686.

Time is of the essence of the contract when stipulated therein. **Kirby v Harrison, 2 Oh St 326; Scott v Fields, 7 Ohio, Part II, Page 90; 58 C.J. 1090-1091.**

The doctrine of anticipatory breach in our judgment will not avail plaintiffs in this action for specific performance because confined to actions at law only.

If the delay of the plaintiffs in making tender to the defendant of the amount due it by its proposal was caused by the acts or conduct of defendant, then the plaintiff may be entitled to specific performance notwithstanding the delay. This, in our judgment, is the one and only issuable question, the answer to which is determinative of the rights of the parties.

A party to a contract cannot take advantage of his own action of omission to escape liability thereon. In **Marvin v Rogers (Tex.), 115 SW 865,** the court uses the following language, which is carried into the first proposition of the syllabus:

"It seems clear that, where a contract is made which is performable at the time of the occurrence of a future event, the law imputes to the promisor an agreement that he will put no obstacle in the way of the happening of that event, and that he will hold himself in readiness to cooperate where his cooperation is a necessary element in the happening of the contingency."

"If a party prevents performance by the other he cannot insist on the stipulation." 13 C.J. 689.

It must be noted that this was not the ordinary loan wherein the obligation to secure the money rested solely upon W. W. Bretz. It was contemplated by the parties and necessary to the consummation of the loan that the defendant company cooperate in the essential matters required by the Federal Land Bank, nor were the creditors to get money directly from the transaction but to take bonds and their consent so to do was a material factor in the consummation of the loan. Therein is found the difference between the factual situation in this case and that which is ordinarily to be found where the obligation to do all that is essential to secure the money within a certain time devolves entirely upon one party.

It may be urged that eventually Mr. Bretz prevailed upon the Federal Land Bank to make the loan and that therefore he should have accomplished it within the time agreed. This, however, does not necessarily follow and it is but reasonable to conclude that the interference interposed by the defendant company was such that it tended to and could have caused the delay. The witness best qualified to speak respecting the effect of the action of the defendant company on the promptness of the Federal Land Bank in consummating the loan is Mr. McEowen, Darke County agent for the Federal Land Bank of Louisville, who testified unequivocally that but for the letters of the defendant, wherein it indicated a purpose not to accept the proceeds of the loan according to its written proposal, payment due defendant thereunder would have been forthcoming and tender made as early as March 1, 1935; that

when he learned of the purpose of defendant to refuse to accept a scale down on plaintiff's indebtedness he pigeon-holed the case and only resumed its consideration when urged so to do by counsel for plaintiff. In one or two places in his testimony he states that the delay caused was about one month but eventually definitely fixes the time within which the tender would have been made but for the action of the defendant, as of March 1, 1935.

Mr. McEowen's conclusion is supported by the record. It is true that one of the agreements to accept a reduction in payment, namely, that of a creditor, the Farmers National Bank, Greenville, Ohio, was not signed until March 4 and the plaintiffs executed an affidavit on the same date, which papers were essential to the closing of the loan and in themselves would have extended the time within which tender could have been made beyond March 4, 1935. However, it appears that all of the creditors had expressed a willingness as early as the middle of February, 1935, to accept the reduced amounts in accordance with the written acceptances thereafter executed and the affidavits of plaintiffs would have been made at any time required. There is nothing to overcome the inferences to be drawn from the testimony of Mr. McEowen that these agreements of creditors would have been forthcoming in ample time to have met the terms of the proposal had it not been for the positive statement in several instances on behalf of defendant company that in no event would it perform its part of the contract.

The equities in this case are clearly with the plaintiffs. The preliminaries to the negotiations with the agent of the land bank were conducted by an authorized agent of the defendant company. It was he who prevailed upon the plaintiffs to make application to the land bank for the loan which eventually was allowed and suggested a meeting of creditors to arrange a reduction of their claims. The defendant company knew that it would have to accept a scale down if a loan was made to the plaintiffs and it is only reasonable to conclude that all proceeded with that understanding. Thereafter, with full knowledge of the situation, it made a specific proposal which by conduct was definitely accepted by the plaintiffs. Acting in the best of faith the plaintiffs attempted to carry out every part of the agreement. The land bank, early in February indicated its purpose to make the loan in the amounts indicated. With full knowledge of the progress of the loan the defendant over its own definite written proposal took a position counter thereto. The natural effect of its indicated refusal to perform was to delay and possibly prevent favorable action by the land bank in consummating the loan. This must have been the purpose actuating the defendant and the delay is the effect which Mr. McEowen says was brought about. He was in the best position to know the result of defendants letters.

The plaintiffs incurred heavy expense and spent much time in meeting the requisites to secure the loan. The other creditors of plaintiffs spent time and made concessions so that the loan might be concluded as contemplated. It would be highly inequitable to deny the plaintiffs the benefit which will be denied to them by reason of the failure of defendants to comply with their own proposal.

We are satisfied that all conditions would have been met by the plaintiffs in strict compliance with the terms of the accepted proposal of defendant company but for the action of the company which resulted in the delay in making the tender.

Specific performance will be decreed as prayed, except that interest should be allowed defendant to April 26, 1935.

GEIGER, J, concurs.

### DISSENTING OPINION

By BARNES, PJ.

It is with regret that I am unable to agree with my associates in the determination of this cause. The statement of the case is fully set out in the majority opinion and it is unnecessary to repeat what has already been said. Counsel for appellant predicates their claimed errors on five general propositions. On four of the propositions I am in accord with the ultimate conclusion of the majority opinion, although as to one or two, on a different ground.

I think the contract for a scale-down, signed by The Union Central Life Insurance Company should properly be considered in the nature of an option to take a lesser amount provided same was paid within ninety days. The consideration supporting would be the expenses incurred by the Bretzes attending their application, abstract, etc., in an effort to secure a loan from the Land Bank Company. The Union Central Life Insurance Company was sufficiently connected in making the applica-

tion to the Land Bank Company for the loan as to be chargeable with the notice of the attending expenses at the time the scale-down agreement was entered into.

Counsel for the Bretzes in their brief urge that time was not of the essence of the contract. I am unable to find that the cases cited in support of their position support the claim at all. The majority opinion holds that time is of the essence of the contract and I am unable to see how this position could be seriously doubted. It is unanimously held that where time is of the essence of the contract a party seeking specific performance must hold himself in readiness to perform within the time stipulated. This the Bretzes did not do. Their tender of performance was fifty-two (52) days after the expiration of the ninety days. The law is also well recognized that where a party to a contract, which under its terms is to be performed within a stipulated time, can not insist upon the performance within the time stipulated if he himself prevents performance. The trial court held that The Union Central Company did not prevent performance and in this conclusion I think he was correct. It is true that the Union Central Life Insurance Company, before the expiration of the ninety days, advised the Land Bank Company, through whom the Bretzes were negotiating for their loan, that their proposition of scale-down was withdrawn unless consummated by February 20th, which was about fourteen or fifteen days prior to the expiration of the ninety days. The Bretzes also claimed that they received an earlier letter from The Union Central Life Insurance Company advising that the agreement for scale-down was withdrawn. This letter was not introduced in evidence, Mr. Bretz claiming that the same was lost. The representative of The Union Central Company makes the claim that no such letter was written. The representative of the Land Bank Company testifies that after receiving the letter action was delayed for a time and afterwards taken up at the request of counsel for the Bretzes and carried through to the point that the mortgage was executed and tender made fifty-two days after the expiration of the ninety days. This representative also testifies that but for the communication from The Union Central Life Insurance Company the loan would have been consummated and tender made within the ninety days. No claim is made that any other act of the Union Central Life Insurance Company prevented the Bretzes from complying with their terms of the agreement. Under this state of the record, giving the most favorable construction, it may not be said in law that the life insurance company prevented the plaintiff from performing within the ninety days. The most that can be said is that the notification from the life insurance company brought about an inactivity. But for the inactivity there would not have been the fifty-two days delay. The Union Central Life Insurance Company was taking the position that since the offer for scale-down had not been accepted they were privileged to withdraw or modify the offer at any time before acceptance. The majority opinion holds against the insurance company on this proposition and I concur in that conclusion. However, they had the right to place themselves in position whereby their theory could be judicially determined, if necessary. This should have been notice to the plaintiff to proceed with all haste in putting themselves in position to perform within the ninety days. I am unable to conclude that the life insurance company did anything that prevented performance by plaintiff within the time stipulated. I arrive at this conclusion as a question of law even admitting for the purpose of the analysis, every question of fact as claimed by the plaintiff.